UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

S.F. *and* R.L., *individually and on behalf of N.F.-L.*,

Plaintiffs,

-v-

NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

21 Civ. 11147 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion for attorneys' fees and costs in this action under the

Individuals with Disabilities Education Act of 1990 ("IDEA"),[1] 20 U.S.C. §§ 1400 *et seq.*

Plaintiffs, S.F. and R.L., sued the New York City Department of Education ("DOE") after being

awarded independent evaluations and related accommodations for their disabled child, N.F.-L.

(together with S.F. and R.L., "plaintiffs"), in an administrative hearing before an impartial

hearing officer ("IHO"). Plaintiffs request attorneys' fees and costs, totaling $91,351.80,

covering both the underlying administrative proceeding and this action.

For the reasons below, the Court grants the motion for fees and costs, but in a sum below

that sought.

## I.      Background

### A.      The IDEA Action and Proceedings Before the IHO

N.F.-L. is a child with a disability covered by the IDEA. *See* Dkt. 4 ("Compl.") ¶ 9. S.F.

and R.L. are N.F.-L.'s parents. *Id.* ¶ 7. On January 27, 2020, S.F. and R.L. filed a due process

complaint ("DPC") with DOE. *Id.* ¶ 36. It alleged that DOE had failed to provide N.F.-L. with a

---

[1] The IDEA, Pub. L. No. 108–46, 118 Stat. 2647 (2004), reauthorized (and amended) the IDEA.
This opinion refers to the updated version of the statute.

free appropriate public education ("FAPE") pursuant to the IDEA during the 2018–2019 and 2019–2020 school years. *Id.* On August 26, 2020 a pendency hearing. *Id.* ¶ 39.

On October 26, 2020, S.F. and R.L. filed an amended DPC to include reimbursement claims for the 2020–2021 school year. *Id.* ¶ 38; *see id.* ¶ 36. The amended DPC, incorporating the claims of the January 27, 2020 DPC, asked that DOE reimburse N.F.-L.'s tuition at the Masters School for the first half of the 2018–2019 school year, and at the Beekman School for the second half of the 2018–2019 school year and the totality of the 2019–2020 and 2020–2021 school years. *Id.* ¶ 38; *see id.* ¶¶ 36, 46. It also sought reimbursement for the Tutoring Program at Beekman, for the neuropsychological evaluation by Dr. George Sachs in 2018, and for math tutoring that N.F.-L. received during the 2019–2020 and 2020–2021 school years. *Id.* ¶ 46.

At two sessions, on February 3 and 12, 2021, an IHO presided over a due process hearing on the merits of N.F.-L.'s claims. *Id.* ¶ 40. Plaintiffs entered 57 documents in evidence and presented testimony from six witnesses.[2] *Id.* ¶¶ 41, 43. DOE did not enter any documents in evidence or call any witnesses. *Id.* ¶¶ 42, 44.

On August 6, 2021, the IHO issued a 31-page final order and decision ordering DOE to reimburse N.F.-L.'s tuition at Beekman for the second half of the 2018–2019 and the totality of the 2019–2020, and 2020–2021 school years. *Id.* ¶¶ 45–46. The IHO also granted reimbursement for the math tutoring and neuropsychological evaluation N.F.-L. received. *Id.*

**B.     Procedural History of the Fees Action in this Court**

On December 29, 2021, plaintiffs filed this action for fees and costs. Dkt. 1 ¶¶ 1, 49; *see* Compl. (refiled Jan. 4, 2023). On April 27, 2022, DOE answered. Dkt. 16. On November 16,

---

[2] Plaintiffs' Complaint states that 57 exhibits were entered in evidence at the due process hearing, Compl. ¶ 40; their brief states that 62 exhibits were received, Mot. at 3. This discrepancy does not bear on the resolution of the pending motion.

2022, plaintiffs moved for summary judgment.  Dkt. 35 ("Mot."); *see also* Dkts. 39–40, 60

(refiled).  On January 20, 2023, DOE filed its opposition.  Dkt. 53 ("Opp."); *see also* Dkt. 56

(refiled).  On February 10, 2022, plaintiffs replied and, for the first time, supplied billing

statements for the administrative proceeding and this fees action.  Dkt. 60 ("Reply"); *see also*

Dkt. 62 (refiled); Dkts. 61, 63 (supporting declarations).  On February 15, 2023, DOE moved for

leave to file a surreply in response to the production of the billing statements, which the Court

granted.  Dkts. 64–66.  On March 16, 2023, DOE filed its surreply.  Dkt. 67; *see also* Dkt. 68

(refiled).

## II.      Applicable Legal Principles

### A.      IDEA Claims

"The IDEA aims 'to ensure that all children with disabilities have available to them a free

appropriate public education that emphasizes special education and related services designed to

meet their unique needs.'"  *A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 72 (2d Cir.

2005) (quoting 20 U.S.C. § 1400(d)(1)(A)).  States that receive certain federal funds must "offer

parents of a disabled student an array of procedural safeguards designed to help ensure the

education of their child."  *Polera v. Bd. of Educ.*, 288 F.3d 478, 482 (2d Cir. 2002).  Parents are

entitled to bring complaints regarding the "provision of a free appropriate public education" to

their child, 20 U.S.C. § 1415(b)(6), and to have those heard by an IHO, *id.* § 1415(f)(1); N.Y.

Educ. L. § 4404(1); *see also A.R.*, 407 F.3d at 72.

"In the United States, parties are ordinarily required to bear their own attorney's fees—

the prevailing party is not entitled to collect from the loser."  *Buckhannon Bd. & Care Home,

Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 602 (2001) (citation omitted).

However, under the IDEA, if a parent of the child with a disability is the "prevailing party" in the

litigation, the district court has discretion to award the parent "reasonable attorneys' fees" and

3

costs incurred.  20 U.S.C. § 1415(i)(3)(B)(i); *see also J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ.*,

278 F.3d 119, 121 (2d Cir. 2002).  The award may cover work performed before (1) the IHO,

(2) the State Review Officer ("SRO"), (3) the district court, and (4) on appeal.  *See A.R.*, 407

F.3d at 84 (affirming award of fees incurred during IHO proceedings and before district court,

and remanding to consider whether fees should be awarded for work during Second Circuit

appeal); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 437 (S.D.N.Y.

2012) (awarding fees for work conducted in SRO proceeding).  Prevailing parties are also

entitled to reimbursement for the reasonable costs incurred in litigating an IDEA case.  *G.B.*, 894

F. Supp. 2d at 443.

To determine the award and the amount of fees, the court must engage in a two-step

inquiry.  First, it determines whether the party seeking to enforce the fee-shifting provision is the

"prevailing party."  *Mr. L. v. Sloan*, 449 F.3d 405, 405–07 (2d Cir. 2006).  Second, it determines

whether the party "should be awarded attorneys' fees."  *Id.*  In determining whether fees should

be awarded, and in what amount, the court examines whether the fees are reasonable in light of

the litigation.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The court has the discretion to

reduce the award if the fees or hours reported are excessive or misleading.  *Id.* at 437; *see* 20

U.S.C. § 1415(i)(3)(F) (requiring court to reduce attorneys' fees awarded upon findings of, *inter

alia*, excessive reported hourly rates); *see also id.* § 1415(i)(3)(G) (exception to subsection (F)

where state or local agency unreasonably protracts final resolution of action or proceeding).

### B.    Prevailing Party

To be a prevailing party under the IDEA, a plaintiff must achieve (1) "some material

alteration of the legal relationship of the parties" that is (2) "judicially sanctioned."  *A.R.*, 407

F.3d at 67.  The Second Circuit has held that a party who receives agency-ordered relief on the

merits of their claim is a "prevailing party" for the purposes of IDEA.  *Id.* at 75.  A party need

not recover on all claims to be considered the "prevailing party." *K.L. v. Warwick Valley Cent. Sch. Dist.*, No. 12 Civ. 6313 (DLC), 2013 WL 4766339, at *5 (S.D.N.Y. Sept. 5, 2013), *aff'd*, 584 F. App'x 17 (2d Cir. 2014) (summary order). But she "must succeed on a significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.*

### C.    Calculation of Fees

The starting point for determining the presumptively reasonable fee award is the "lodestar" amount, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). The lodestar is not "conclusive in all circumstances," and may be adjusted when it fails to "adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.* at 167 (internal citation omitted).

#### 1.    Reasonable Hourly Rates

Under the fee-shifting provision of the IDEA, the court determines a reasonable hourly rate "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). A reasonable rate is one a reasonable, paying-per-hour client would pay for the same services rendered. *K.F. v. N.Y.C. Dep't of Educ.*, No. 10 Civ. 5465 (PKC), 2011 WL 3586142, at *3 (S.D.N.Y. Aug. 10, 2011), *adhered to as amended*, 2011 WL 4684361 (S.D.N.Y. Oct. 5, 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). The community used for purposes of IDEA fee-shifting litigation is the district in which the issue arose—specifically, where the student was denied a FAPE. *Id.* at *2. However, in determining reasonable hourly rates, it is also important to look to the area of legal practice at issue. That is because legal markets are today so interconnected that it is no longer meaningful, in assessing a reasonable rate, to look at geographic location alone. *See Arbor Hill*, 522 F.3d at 192.

In determining a reasonable rate, district courts are also to consider case-specific variables known as the "*Johnson* factors." These include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3. "A district court need not 'recite and make separate findings as to all twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee award.'" *E.F. ex rel. N.R. v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 5243 (GBD) (FM), 2014 WL 1092847, at *3 (S.D.N.Y. Mar. 17, 2014) (quoting *Lochren v. Cnty. of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009)).

### 2.     Reasonable Hours

Once a reasonable rate of pay has been calculated, it is multiplied by the reasonable number of hours expended to determine the award amount. The Court has the discretion to disregard hours viewed as "excessive, redundant, or otherwise unnecessary." *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434). To determine the reasonableness of hours spent on a matter, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award" by a reasonable percentage. *Hensley*, 461 U.S. at 436–37; *see also McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application."); *J.R. v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 11783 (RA), 2021 WL 3406370, at *5 (S.D.N.Y. Aug. 4, 2021) (citing cases), *aff'd sub nom. H.C. v. N.Y.C. Dep't of Educ.*, No. 21-

1582, 2023 WL 4094873 (2d Cir. June 21, 2023).  "[T]rial courts need not, and indeed should

not, become green-eyeshade accountants.  The essential goal in shifting fees . . . is to do rough

justice, not to achieve auditing perfection."  *Fox v. Vice*, 563 U.S. 826, 838 (2011).

### D.  Costs

A district court may also award reasonable costs to the prevailing party.  20 U.S.C.

§ 1415(i)(3)(B)(i)(I).  The term "costs" includes costs incurred in connection with work yielding

fees covered by a fee award, as well as the specific types of costs set out in 28 U.S.C. § 1920, the

general provision governing the taxation of costs in federal court.  *See Arlington Cent. Sch. Dist.*

*Bd. of Educ. v. Murphy*, 548 U.S. 291, 297–98 (2006); *G.B.*, 894 F. Supp. 2d at 443.  Commonly

compensable costs include reasonable filing and process server costs.  *See* 28 U.S.C. § 1920;

*G.B.*, 894 F. Supp. 2d at 443; *M.K.*, 578 F. Supp. 2d at 434.

## III.  Discussion

### A.  Overview of the Attorneys' Fees and Costs Request

It is undisputed that S.F. and R.L. prevailed in the proceeding before the IHO.  *See* Opp.

at 1, 3.  The IHO ordered DOE to reimburse N.F.-L.'s tutoring, neuropsychological evaluation,

and tuition at the Beekman School for the second half of the 2018–2019 school year and for the

entirety of the 2019–2020 and 2020–2021 school years.  Compl. ¶ 46.  The sole issue here is thus

whether the fees and costs plaintiffs claim are reasonable.  Plaintiffs seek fees and costs for work

before the IHO in the administrative proceeding, and in this follow-on fees litigation.  *Id.* ¶ 49.

At the administrative proceeding, plaintiffs were represented by Spencer Walsh Law

("SWL").  They seek a fee award reflecting hours worked by six SWL attorneys (Christopher

Barnett, Tracey Discepolo, Lauren Druyan, Anna Belle Hoots, Tracey Spencer Walsh, and

Hermann Walz), Mot. at 5–6, and five paralegals or others performing administrative work

(Wendy Ahlstrand, Ashley Camarena, Catriona Carey, Orla Mannion, and Sonali Sanyal), *id.*  In

7

connection with that proceeding, plaintiffs seek an award reflecting the following hours and billing rates:

| Attorneys' Fees: Administrative Proceeding | | | | | |
|---|---|---|---|---|---|
| Attorney | Rate | | Hours | Total | |
| Christopher Barnett | $ | 525.00 | 1.15 | $ | 603.75 |
| Tracey Discepolo | $ | 475.00 | 0.42 | $ | 199.50 |
| Lauren Druyan | $ | 495.00 | 7.1 | $ | 3,514.50 |
| Anna Belle Hoots[3] | $ | 300.00 | 84.75 | $ | 25,425.00 |
| Anna Belle Hoots | $ | 125.00 | 2.89 | $ | 361.25 |
| Tracey Spencer Walsh | $ | 695.00 | 32.88 | $ | 22,851.60 |
| Tracey Spencer Walsh | $ | 595.00 | 9.22 | $ | 5,485.90 |
| Hermann Walz | $ | 575.00 | 0.16 | $ | 92.00 |
| Subtotal | | | 138.57 | $ | 58,533.50 |
| Paralegal Fees: Administrative Proceeding | | | | | |
| Timekeeper | Rate | | Hours | Total | |
| Wendy Ahlstrand | $ | 200.00 | 43.89 | $ | 8,778.00 |
| Ashley Camarena | $ | 190.00 | 1.95 | $ | 370.50 |
| Catriona Carey | $ | 150.00 | 1.7 | $ | 255.00 |
| Orla Mannion | $ | 190.00 | 19.44 | $ | 3,693.60 |
| Sonali Sanyal | $ | 190.00 | 26.93 | $ | 5,116.70 |
| Subtotal | | | 93.91 | $ | 18,213.80 |
| **Total** | | | **232.48** | **$** | **76,747.30** |

Before this Court, William DeVinney of Briglia Hundley, PC ("BH") served as lead attorney. *See* Dkt. 63 ("DeVinney Decl.") ¶ 1. Plaintiffs seek an award for his work as follows:

| Attorneys' Fees: Southern District of New York | | | | | |
|---|---|---|---|---|---|
| Attorney | Rate | | Hours | Total | |
| William DeVinney | $ | 475.00 | 29.9 | $ | 14,202.50 |
| Subtotal | | | 29.9 | $ | 14,202.50 |
| **Total** | | | **29.9** | **$** | **14,202.50** |

Plaintiffs thus request a total in fees of $90,949.80: $76,747.30 for the administrative case and $14,202.50 for the fees litigation in this Court. Mot. at 6.

---

[3] Before August 14, 2020, Hoots was a law clerk, and SWL billed her work at a rate of $125 per hour. Thereafter, she was an associate, and her billing rate was $300 per hour.

Plaintiffs also seek reimbursement for $402 in costs incurred during the fees litigation phase, representing a $402 filing fee for this litigation. *Id.*

| Costs | |
|---|---|
| **Expense** | **Total** |
| SDNY Filing Fee | $           402.00 |
| **Total** | **$           402.00** |

The Court first assesses the nature of the underlying legal work and whether it justifies specialized rates.[4]  The Court next determines the reasonable hourly rate for each timekeeper. The Court then addresses DOE's objections to paying for certain hours billed; its request for an across-the-board fee reduction; and plaintiffs' request for costs.

## B.        Reasonable Rates

The Court has considered all *Johnson* factors in its analysis for each timekeeper.  Its discussion here centers on the facts it has found most influential.

### 1.        General Considerations

IDEA litigation is undoubtedly a specialized field in which attorneys seek to vindicate vitally important interests of children in need of special education.  Plaintiffs argue that, within this field, this case was unusually challenging because the child's disability was masked by his above-average intelligence, making it harder to demonstrate the need for specialized treatment. *See id.* at 9–10, 12.  But, beyond conclusory statements to this effect, plaintiffs do not support

---

[4] At the threshold, DOE argues that plaintiffs' fee application should be dismissed for failure to provide "supporting, contemporaneous billing records" and because it was filed with errors on PACER.  Opp. at 4–5.  Plaintiffs' initial fee application was indeed strikingly deficient, *see* DeVinney Decl. ¶¶ 2–7, and plaintiffs compounded the problem by failing to supply billing records in their amended filing, doing so only along with their reply brief, which required the Court, out of fairness, to grant leave to DOE to file a surreply. *See* Dkts. 62, 66.  As explained below, the Court has discounted plaintiffs' fee award request for their work before this Court on account of the inefficiency and wastefulness of plaintiffs' lawyering.  But denying an award outright, where plaintiffs' counsel undeniably secured major relief, is a remedy too extreme and unreasonable.

that the child's makeup made this case materially harder than others.

Nor does the record bespeak that, relative to other IDEA litigations, this case presented novel legal or factual issues or unusual challenges. During the administrative proceeding, the IHO held two hearings: the pendency hearing on August 26, 2020 and the due process hearing on February 3 and 12, 2021. *See* Compl. ¶¶ 39–40. On August 6, 2021, it issued its FOFD in plaintiffs' favor. *Id.* ¶ 45. Salient here, during the due process hearing, DOE only modestly contested the relief plaintiffs sought and did not call witnesses or introduce any documents. *Id.* ¶¶ 42–44; *see* Opp. at 9. And the relief sought tracked that familiar in many IDEA cases: reimbursement for tuition, tutoring, and a psychological evaluation. *See J.R.*, 2021 WL 3406370, at *4 ("[T]his appears to have been a fairly standard action for special education and related services[,] . . . [as] [d]efendant did not put on any witnesses nor present any evidence."). Nor have plaintiffs shown that, by taking on this representation, SWL was inhibited from taking on other work. This context undermines plaintiffs' suggestion that the reasonable hour rates here are above those in ordinary IDEA cases. *See H.A. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 10785 (PAE), 2022 WL 580772, at *5 (S.D.N.Y. Feb. 25, 2022). They are not.

For the purpose of assessing reasonable rates, the relevant community is the Southern District of New York, where the administrative proceeding and this litigation were centered. The relevant practice area is special education law, specifically IDEA litigation. In recent years, "[t]he prevailing market rate for experienced, special-education attorneys in the New York area . . . [has been] between $350 and $475 per hour." *J.R.*, 2021 WL 3406370, at *3 (citing *M.D. v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 417 (JMF), 2018 WL 4386086, at *3 (S.D.N.Y. Sept. 14, 2018) (collecting cases)); *C.D. v. Minisink Valley Cent. Sch. Dist.*, No. 17 Civ. 7632 (PAE), 2018 WL 3769972, at *6 (S.D.N.Y. Aug. 9, 2018) (same); *H.A.*, 2022 WL 580772, at *5.

"Paralegals, depending on skills and experience, have generally garnered between $100 and $125 per hour in IDEA cases in this District." *J.R.*, 2021 WL 3406370, at *3 (quoting *R.G. v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 6851 (VEC), 2019 WL 4735050, at *3 (S.D.N.Y. Sept. 26, 2019) (collecting cases)).

### 2.   Tracey Spencer Walsh ("Walsh")

Plaintiffs seek an hourly rate of $595 for Walsh's work before January 1, 2021 and $695 for her work afterwards. *See* Mot. at 11. DOE urges an hourly rate of $367.50. *See* Opp. at 3.

Walsh was plaintiffs' lead counsel. *See* Dkt. 61 ("Walsh Decl.") ¶ 2. She led preparation, communicated with the parent clients and DOE, attended the due process hearing, and drafted the DPC. *See* Dkt. 62 at Exs. A, B. An expert in special education law, Walsh is a 1994 law school graduate who has been litigating special education matters since 2008. Walsh Decl. ¶ 2; *see also* Mot. at 11; Reply at Ex. D (resume). In 2015, Walsh founded SWL, which represents "children and adolescents diagnosed with [developmental] disabilities in matters arising under the IDEA." Reply at Ex. D. She worked 42.1 hours in connection with the administrative proceeding in this case. *See* Mot. at 5.

Courts in this District and the Eastern District of New York have awarded Walsh fees based on rates of between $375 and $425 per hour, rejecting her requests to use hourly rates of more than $550. In September 2015, Walsh was awarded fees based on a rate of $375 per hour. *See S.A. v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 435 (RMM) (MDG), 2015 WL 5579690, at *7 (E.D.N.Y. Sept. 22, 2015). In March 2021, Walsh was awarded fees based on an hourly rate of $400 in a matter that, like this, involved a "lengthy hearing" whose contested issues were found not to present unusual "novelty and difficulty." *See A.B. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 3129 (SDA), 2021 WL 951928, at *3–4 (S.D.N.Y. Mar. 13, 2021). In February 2022, Walsh was awarded at a rate of $425 per hour. *See C.A. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 2101

(AMD) (VMS), 2022 WL 673762, at *5 (E.D.N.Y. Feb. 16, 2022), *report and recommendation adopted*, No. 20 Civ. 2101 (AMD) (VMS), 2022 WL 673272 (E.D.N.Y. Mar. 7, 2022).

The Court's judgment—based on a careful review of the *Johnson* factors and the parties' arguments—is that a rate at the top end of these awards, that is, $425 per hour, is appropriate for Walsh's work here.  Walsh undeniably by now has deep experience in the special-education field.  But the rates plaintiffs seek, $595 and $695, far exceed the rates ordinarily awarded experienced practitioners in cases not found to present unusual challenges.  Such is the case here. As noted, DOE only modestly contested the relief plaintiffs sought and did not call any witnesses or offer any exhibits; and plaintiffs have not shown that the hearing implicated unusually hard questions of law or fact or extraordinary relief, or that the representation prevented SWL from taking on other work.  An hourly rate of $425, by contrast, is consistent with awards granted for successful IDEA representations of broadly similar character.  *See, e.g., C.A.*, 2022 WL 673762, at *6 (awarding Walsh $425 per hour); *J.R.*, 2021 WL 3406370, at *3; *M.H. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 1923 (LJL), 2021 WL 4804031, at *13 (S.D.N.Y. Oct. 1, 2021) (awarding partner $420 per hour in case involving contested hearing), *aff'd*, 2023 WL 4094873; *C.D.*, 2018 WL 37669972, at *2, *7 (awarding partner $400 per hour in an IDEA case with 11 days' worth of hearings).[5]

### 3.   Hermann Walz ("Walz")

Plaintiffs seek an hourly rate for Walz of $575.  *See* Mot. at 5.  DOE urges $350.  *See* Opp. at 3.  Walz has roughly 30 years of experience as a litigator, four in the special education

---

[5] Plaintiffs argue that billing rates in this District have increased in recent years.  The Court has considered that argument in selecting a rate that matches the top one awarded for Walsh's work in the reported case law (from a 2021 case).

arena. *See* Mot. at 13. He has worked at SWL since 2019.[6] *Id.* Walz logged a total of 9.6

*minutes* in connection with the administrative proceeding in this action. *Id.* at 5.[7] These 9.6

minutes were spent, according to billing records, on (1) an intra-office case conference about a

"notary"; and (2) in televideo conference with that notary. Dkt. 62-1 at 25.

Plaintiffs' request for a fee award that values Walz's work in this case at an hourly rate of

$575 is outrageous. Walz's body of work in this case was so trifling (fewer than 10 minutes) and

inconsequential (consisting of two conferences with a notary) that responsible counsel, alert to

the optics, might have elected to refrain from seeking a fee award at all for such work, which as

described, did not call upon any expertise. And even if Walz's 9.6 minutes had been spent on

work of demonstrated substance, Walz, despite longer litigation experience, has just four years'

experience in special education law. It thus is fair to liken his capacity to contribute at an IDEA

administrative hearing to that of a senior associate or at most a junior partner. In this case, given

the brevity and non-substantive nature of the work Walz performed in his two conferences with

the notary, the Court's judgment is that Walz's 9.6 minutes of work are rightly valued at a rate

comparable to that of a junior associate. An hourly rate of $200 is appropriate for such work.

*See C.D.*, 2018 WL 3769972, at *7 (citing *J.S. ex rel. Z.S. v. Carmel Cent. Sch. Dist.*, No. 10

Civ. 8021 (VB), 2011 WL 3251801, at *6 (S.D.N.Y. Jul. 26, 2011)) (for associates working on

IDEA litigation, "courts in this District have typically approved rates of $150–$275"); *H.C. v.*

---

[6] Plaintiffs did not submit Walz's current resume. The Court relies here on plaintiffs' account in their memorandum of law, *see* Mot. at 13–14, with which DOE has not taken issue.

[7] In prior cases in which Walz has done more—and more demonstrably substantive—work, courts have awarded fees for Walz's work in administrative proceedings based on hourly rates of between $300 and $350. *See, e.g., A.B.*, 2021 WL 951928, at *6 (awarding $300 per hour); *C.A.*, 2022 WL 673762, at *6 (awarding $350 per hour). This decision, which turns on the brevity and elemental nature of Walz's reported work here, should not be taken to cast doubt on the validity of such higher fee awards for Walz's work in cases in which his work added greater value.

*N.Y.C. Dep't of Educ.*, No. 20 Civ. 844 (JLC), 2021 WL 2471195, at *6 (S.D.N.Y. June 17, 2021) (awarding associate $200 hourly rate in IDEA litigation), *aff'd*, 2023 WL 4094873; *S.J. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 1922 (LGS), 2021 WL 100501, at *5 (S.D.N.Y. Jan. 12, 2021) (same), *modified*, No. 20 Civ. 1922 (LGS), 2021 WL 536080 (S.D.N.Y. Jan. 25, 2021), *aff'd*, No. 21-240-CV, 2022 WL 1409578 (2d Cir. May 4, 2022), *and aff'd*, No. 21-240-CV, 2022 WL 1409578 (2d Cir. May 4, 2022).

### 4.    Christopher Barnett ("Barnett")

Plaintiffs seek an hourly rate for Barnett of $525. *See* Mot. at 5. DOE urges $300 per hour. *See* Opp. at 3. Barnett is a 2005 law school graduate with roughly 17 years of litigation experience, with 12 in the special education arena. Reply at Ex. E (resume). He litigated special-education matters beginning in 2010 within DOE's special education unit, as a team leader and senior policy advisor. He is now an associate at SWL.[8] Mot. at 14–15. Barnett worked a total of 1.15 hours in connection with the administrative proceeding in this action. Mot. at 5. This time was spent in intra-office case conferences and notarizing a document. *See* Dkt. 62-1 at 21, 23, 31.

Courts in this District and the Eastern District have awarded Barnett $300 per hour in successful, but routine, administrative proceedings, where Barnett contributed only nominally to the litigation. *See A.B.*, 2021 WL 951928, at *6–7 (awarding $300 hourly rate for approximately 52 minutes of work); *C.A.*, 2022 WL 673762, at *6 (same for 15 minutes of work). Under the case law, a rate of $300 per hour is appropriate for such work.

---

[8] The Court cannot determine when Barnett joined SWL from DOE. Plaintiffs do not offer a timeline in their briefing, *see* Mot. at 14–15, and Barnett's resume on the record is outdated. It lists him as still working at DOE. *See* Reply at Ex. E (listing profession from December 2015 to "present" as "Senior Policy Advisor; Director of Special Projects, Committees on Special Education" at DOE).

### 5.    Lauren Druyan ("Druyan")

Plaintiffs seek an hourly rate for Lauren Druyan of $495.  *See* Mot. at 5.  DOE urges $225.  Opp. at 3.  Druyan is a 2008 law school graduate with, as of her last billing entry in this matter, approximately 11 years' experience litigating special education matters.  Reply at Ex. F (resume).  Between 2012 and 2016, she worked in DOE's special education litigation unit, and has since worked in private practice in the special education area, joining SWL in June 2018.  *Id.*  Here, Druyan worked 7.1 hours in connection with the administrative proceeding.  Mot. at 5.

Courts in this District and the Eastern District have found rates between $280–$300 per hour appropriate for Druyan's work in administrative proceedings.  *See A.B.*, 2021 WL 951928, at *5–6 (finding $280 per hour "commensurate with the rate of a mid-level associate doing special education work"); *C.A.*, 2022 WL 673762, at *6 (finding $300 per hour reasonable because she was a "senior associate[] with experience specific to the special education law area").

Based on the *Johnson* factors and the parties' arguments, the Court finds an hourly rate of $300—the highest of those awarded based on Druyan's work—reasonable.  The much higher rates sought by plaintiffs exceed those awarded for far more seasoned IDEA attorneys.  *See, e.g., M.R. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 5503 (VEC), 2022 WL 16575767, at *2 (S.D.N.Y. Oct. 31, 2022) (awarding hourly rates of $367.50 to senior attorneys, $210 for mid-level associates, and $168 to a junior attorney).

6.      **Tracey Discepolo ("Discepolo")**

Plaintiffs seek a rate of $475 per hour for Discepolo.[9]  *See* Mot. at 5.  DOE urges $225.

Opp. at 3.  Discepolo is a 2000 law school graduate, who has been a member of the bar since

2001, was employed by American International Group from 2013 to 2017, where she did *pro

bono* work on special education cases, and who has worked at SWL since.  Reply at Ex. G

(resume).  *Id.*  Including *pro bono* work, she has roughly nine years of experience in the special

education field.  *Id.*  Discepolo logged a total of 25 minutes in connection with the administrative

proceeding in this case.  Mot. at 5.  That time was spent in an intra-office conference and

discussing settlement documents with a legal assistant.  *See* Dkt. 62-1 at 2, 4.

Courts in this District have awarded Discepolo $200 per hour for work in administrative

proceedings.  *See A.B.*, 2021 WL 951928, at *6 (awarding $200 per hour); *C.B. v. N.Y.C. Dep't

of Educ.*, No. 18 Civ. 07337 (CM), 2019 WL 3162177, at *9 (S.D.N.Y. July 2, 2019) (finding

$200 per hour "commensurate with the rate of a junior associate doing special education work"

and reflecting the fact that her "pro bono work, while relevant, was not full-time work").  Here,

considering the *Johnson* factors and the parties' arguments, the Court finds $200 per hour

appropriate.  Although a case could be made a for a somewhat higher rate (*e.g.*, $225 per hour)

given Discepolo's increased experience, such is unwarranted here, because the minimal work

Discepolo did does not bespeak work of substantive significance.

---

[9] While plaintiffs' billing records and summary chart all reflect a rate of $475 per hour for
Discepolo's work, plaintiffs erroneously request $400 in its memorandum of law.  *See* Mot. at 5.
Despite this error, the Court understands plaintiffs to request a $475 hourly rate.

### 7.    Anna Belle Hoots ("Hoots")

Plaintiffs seek $125 per hour for Hoots's work as a "law clerk"[10] and $300 per hour for her later work as an "associate," both in connection with the administrative proceeding. *See* Mot. at 5.  DOE urges $100 per hour and $150 per hour, respectively. *See* Opp. at 3.  Hoots is a 2020 law school graduate.  Reply at Ex. H (resume).  The terms "law clerk" and "associate" obfuscate Hoot's actual experience in serving in each of those roles.  When she served as a "law clerk" in 2019 and 2020, Hoots was a law student. *Id.*  Her "associate" role, per SWL's billing, began at some time in 2020, after she graduated from law school but *before* she was barred. *See* Dkt. 62-1 at 19 (Hoots billing $125 per hour on August 16, 2019); *id.* at 21 (Hoots billing $300 per hour on August 14, 2020).  The record here does not indicate when Hoots was admitted to practice in New York. *See* Reply at Ex. H (resume not indicating bar admission, instead only "[p]ermanent [o]ffer" accepted at SWL); Mem. at 16 (describing "associate" work as the period "after Ms. Hoots received her J.D." without reference to any bar admission).  However, a recent decision in this District, relying on plaintiff's submissions, states that Hoots "was admitted to practice in the State of New York on February 8, 2021." *A.B.*, 2021 WL 951928, at *4 (citing A.B.'s reply brief).  The Court here adopts this date in the interest of identifying rates that accurately reflect Hoots's varying qualifications at different points in this litigation.  Hoots worked more hours on this matter than any other professional: 2.89 hours as a "law clerk" and 84.75 hours as an "associate."  Mot. at 5.  Of that total, she worked 54.18 hours as a law student or unbarred associate, and 33.46 hours on or after her admission to the bar.

---

.[10] Plaintiffs erroneously describe billing $175 per hour for this work.  Mot. at 15–16.  ("Before Ms. Hoots earned her J.D., [SWL] billed Ms. Hoots at $175 an hour.").  This contradicts the billing records, which repeatedly list her rate as $125 for this period.

Courts in this District and the Eastern District have awarded Hoots varying rates depending on her bar admission status at the time of billing. For the period when Hoots was in law school until she was barred on February 8, 2021, courts have awarded Hoots $100–$150 per hour. *See C.A.*, 2022 WL 673762, at *6 ($100 per hour); *A.B.*, 2021 WL 951928, at *4 ($150 per hour). For her work thereafter, courts have awarded Hoots $150–$175 per hour. *See C.A.*, 2022 WL 673762, at *6 ($150 per hour); *A.B.*, 2021 WL 951928, at *4 ($175 per hour).

Having considered the *Johnson* factors and the parties' arguments, the Court finds a $200 hourly rate reasonable for Hoots's 33.46 hours as a barred attorney on or after February 8, 2021. An award on the upper range is appropriate here where Hoots served as the principal attorney by measure of hours spent, bespeaking expertise in the particular case over a lengthy litigation. The Court would find a rate of $150 appropriate for Hoots's 54.18 hours worked prior to February 8, 2021, save those while she was still in law school, as is "consistent with the hourly rate awarded by other courts in this district to law clerks or attorneys not yet admitted to the bar." *Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 659 (S.D.N.Y. 2019). However, because SWL billed plaintiffs at a rate of $125 per hour for Hoots's work with respect to 2.89 hours of this total, the Court will use a $125 hourly rate for those 2.89 hours.

### 8. Wendy Ahlstrand ("Ahlstrand"), Ashley Camarena ("Camarena"), Catriona Carey ("Carey"), Orla Mannion ("Mannion"), and Sonali Sanyal ("Sanyal")

As to paralegals, plaintiffs seek hourly rates of $200 for Wendy Ahlstrand, $190 for Ashley Camarena, $150 for Catriona Carey, $190 for Orla Mannion, and $190 for Sonali Sanyal. *See* Mot. at 5–6. DOE recommends a rate of $100 per hour for all. Opp. at 3. Almost all these persons have been employed by SWL for fewer than 5 years. Reply at Ex. I (resumes). They collectively billed 93.91 hours in connection with the administrative proceeding. *See* Opp. at 18.

Plaintiffs argue that higher-than-customary rates are warranted for the paralegal work in this case given the paralegals' experience in special education law. *See* Mot. at 16–17. But plaintiffs have not explained why such expertise (*e.g.*, Ahlstrand's prior work experience for five months as a special-education advocate) translated into more challenging work or superior performance here. The Court accordingly finds the rates customarily set for comparably experienced paralegals in IDEA cases to set the measure of the appropriate rates here.

In this District, "[p]aralegals, depending on skills and experience, have generally garnered between $100 and $125 per hour in IDEA cases." *R.G.*, 2019 WL 4735050, at *3. "Paralegals with evidence of specialized qualifications typically receive $120- or $125-per-hour." *C.B.*, 2019 WL 3162177, at *9 (citations omitted). "Where plaintiffs have failed to provide evidence showing that a paralegal has special qualifications in the form of formal paralegal training, licenses, degrees, or certifications or longer paralegal experience, courts have typically awarded fees at the lower rate of $100-per-hour for that paralegal." *Id.* (internal quotation marks and citation omitted).[11]

Consistent with these authorities, the Court finds $100 per hour a reasonable rate for work in this matter by paralegals with entry-level but not extensive experience. On the record before the Court, that description fits all the above paralegals. *See Robinson v. City of New York*, No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *5 (S.D.N.Y. Sept. 29, 2009) ("While defendants are correct that the burden is on the moving party to show that the requested fees are reasonable, plaintiffs' request of $100 per hour is on the low end of the customary range in this district and therefore commensurate with the presumed inexperience of plaintiffs' paralegal

---

[11] This case did not involve a jury trial, the demands of which, in commercial cases, have sometimes resulted in approvals of $200 hourly rates for significantly experienced paralegals. *See, e.g.*, *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 56–57 (S.D.N.Y. 2015).

staff."); *Torres v. City of New York*, No. 07 Civ. 3473 (GEL), 2008 WL 419306, at *2 (S.D.N.Y.

Feb. 14, 2008) ("compensation must be made near the lower end of the market range" given lack

of evidence regarding paralegals' qualifications).

### 9.      William DeVinney ("DeVinney")

Plaintiffs seek an award based on a rate of $475 per hour for the work DeVinney

performed in the fees action in this Court, in which he was the sole timekeeper and worked a

total of 29.9 hours. Mot. at 6. DOE counters that DeVinney should be compensated at $200 for

his work as an attorney and $100 for work of a paralegal nature. Opp. at 3. DeVinney has

nearly 25 years of complex litigation experience. Reply at Ex. J (resume).

For multiple reasons, plaintiffs' claimed rate of $475 is excessive, notwithstanding

DeVinney's years of litigation experience. For one, the fees action did not call upon special

expertise. It merely entailed the well-trod and relatively mechanistic process of preparing and

defending a fee application. *See, e.g.*, *Cruceta v. City of New York*, No. 10 Civ. 5059 (FB) (JO),

2012 WL 2885113, at *7 (E.D.N.Y. Feb. 7, 2012) (explaining that a "straightforward fee

petition" does not require complex legal analysis or multiple attorneys); *M.D.*, 2021 WL

3030053, at *6 (describing federal fees' litigation in IDEA as one of "low degree of

complexity"). Second, even in the context of such non-challenging fee-application work, BH's

lawyering, for which it identifies DeVinney as solely responsible, was substandard. It reflected

disregard for deadlines, including failing to submit vital time records until the reply brief,

causing unnecessary work (a surreply) for the defense. The quality of the lawyering on this

project, in the Court's view, did not exceed that of a junior associate. The Court accordingly

agrees with DOE that a rate of $200 per hour is in order here. Corroborating the choice of this

rate is that, as DOE notes, the memorandum of law that DeVinney submitted here is close to

identical to that his firm submitted in *F.R. v. New York City Department of Education*, No. 22

Civ. 1776 (VEC) (GWG) (S.D.N.Y.) (Dkt. 27).  Given the extent of apparent copying and pasting, plaintiffs cannot claim that preparing this motion entailed much research or originality. A $200 hourly rate for the legal component of DeVinney's work in connection with the fees motion is therefore reasonable.

As to the paralegal component of DeVinney's work, the Court agrees with DOE that a lower rate is warranted for such work, specifically, $125 per hour, which is consistent with the rate an experienced paralegal would be billed out at on a similar project. *J.R.*, 2021 WL 3406370, at *3 (quoting *R.G.*, 2019 WL 4735050, at *3 (collecting cases)).  BH's billing records reflect one entry for purely administrative work: 0.5 hours "draft[ing] and arrang[ing] service of process," which occurred on January 5, 2022. *See* Dkt. 62-1 at 44.  The Court will award fees at a rate of $125 for that entry.

For the foregoing reasons, the Court's fee award will treat 29.4 hours of DeVinney's work as compensable at a rate of $200 per hour and 0.5 hours of his work as compensable at a rate of $125 per hour.

### C.    Reasonable Hours

#### 1.    Administrative Proceeding

DOE argues that SWL's fee request reflects excessive hours spent on the administrative proceeding. *See* Opp. at 17–23.  It seeks a 50% reduction from the hours billed in connection with plaintiffs' closing brief, and thereafter an across-the-board reduction of 30% in the hours spent in that proceeding. *Id.* at 21.  DOE argues that it was unnecessary and unreasonable for SWL to spend 135.68 attorney hours and 93.91 paralegal hours where the two hearing sessions lasted less than 6.5 hours, the hearing did not entail an affirmative defense case or implicate complex issues, and the remedy was only moderately contested. *Id.* at 18.  Opposing any reduction, plaintiffs counter that the hours SWL spent accords with IDEA cases of similar length.

*See* Mot. at 17; *see also C.D.*, 2018 WL 3769972, at *6; *M.C. ex rel. E.C. v. Dep't of Educ. of City of N.Y.*, No. 12 Civ. 9281 (CM) (AJP), 2013 WL 2403485, at *1 (S.D.N.Y. June 4, 2013), *report and recommendation adopted*, 2013 WL 3744066 (S.D.N.Y. June 28, 2013).  They also note that the case implicated three school years and multiple schools, and that in evaluating the reasonableness of hours, courts do not consider "whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *O.R. v. N.Y.C. Dep't of Educ.*, 340 F. Supp. 3d 357, 366–67 (S.D.N.Y. 2018) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)); *see also Loc. 1180, Commc'ns Workers of Am., AFL-CIO v. City of N.Y.*, 392 F. Supp. 3d 361, 381 (S.D.N.Y. 2019).

The Court's judgment is that a 15% reduction in the hours spent in the administrative proceeding fairly prunes plaintiffs' counsel's hours to a total that was reasonable for counsel to work.  The Court finds, with DOE that, in several respects, SWL's fee request embeds excessive hours.

First, SWL's invoices, *see* Dkt. 62-1, report inordinate time spent on intraoffice communications.  These list more than 130 entries for such work, totaling more than 54 hours of attorney and paralegal time.  Such communications represent nearly a quarter (some 23.5%) of the time plaintiffs' attorneys and paralegals reportedly spent on the administrative proceeding. Plaintiffs have not explained the need in this representation for this outsized volume of internal communications.  And unexplained high hours spent on internal conferences is a familiar basis for a fee reduction, reflecting the reality that "internal conferences are harder to verify and therefore more likely to be excessive." *SING for Serv., LLC v. DOWC Admin. Servs., LLC*, No. 20 Civ. 5617 (GHW), 2023 WL 3294279, at *9 (S.D.N.Y. May 5, 2023) (internal quotation

omitted); *Pope v. Cnty. of Albany*, No. 11 Civ. 736 (LEK) (CFH), 2015 WL 5510944, at *13

(N.D.N.Y. Sept. 16, 2015) (imposing reduction of 40% on billed hours where records reflected,

*inter alia*, a "proliferation of intra-office conferences"); *see also Cooper v. Sunshine Recoveries,*

*Inc.*, No. 00 Civ. 8898 (LTS) (JTF), 2001 WL 740765, at *3 (S.D.N.Y. June 27, 2001) (reducing

hours for excessive inter-office communications); *Gilberg v. Shea*, No. 95 Civ. 4247, 1996 WL

406682, at *5 (S.D.N.Y. May 31, 1996) ('[O]ffice conferences' have been the basis for courts to

reduce fee requests by one-quarter to one-third.").

Second, plaintiffs' counsel billed 4.84 hours to review transcripts of conferences that

multiple attorneys attended. *See* Dkt. 62-1 at 40.  (At the rates SWL charged their clients, this

task cost plaintiffs more than $2,200, or an average of more than $450 per hour.)  Plaintiffs have

not concretely justified devoting this much time, by senior timekeepers, to this exercise.

Third, as multiple time entries reflect, plaintiffs' counsel utilized attorneys, and at

attorney rates, for work that, as described, could have been accomplished by a paralegal.  Four

examples suffice.  On seven different occasions between October 20 and November 24, 2020,

Hoots, in her role as attorney, billed 0.49 hours for communications regarding notarization, with

billing descriptions including, "Communication with Student's Providers: re: notarization,"

"Communication with Student's Providers: re: notary of affidavit," "Communication with

Student's Providers: re: updated affidavit and notary," and "Communication: w/ Rebecca Tyree

to facilitate notarization." *See id.* at 29, 32.  On November 2, 2020, Hoots, again in her role as

an attorney, billed three separate entries totaling 0.24 hours to communicate hearing

adjournments, with billing descriptions including "Communication with Impartial Hearing

Officer: re: adjournment" and "Communication with Student's Providers: re: adjournment and

new hearing dates." *Id.* at 29–30.  On August 15, 2018, Walsh, in her role as attorney, billed

0.17 hours to "File[] 10 Day Notice," a paralegal task requiring no legal skill or training. *See id.* at 2. And as canvassed before, on October 26, 2020, Walz, in his role as attorney, billed 0.08 hours for a "Zoom notary appointment w/Maren Holman at Beekman." Where an attorney has billed time for performing administrative tasks, such as communicating about hearing adjournments, organizing notarization of documents, filing documents with the court, or drafting boilerplate procedural forms such as certificates of service, such time should not be compensated at an attorney-level billing rate. *See, e.g.*, *O.R.*, 340 F. Supp. 3d at 368 (purely clerical or secretarial tasks, such as downloading or copying documents, organizing files, informing individuals about hearing scheduling, and other ministerial communications are not to be included as part of an award of fees and costs); *LV v. N.Y.C. Dep't of Educ.*, 700 F. Supp. 2d 510, 524 (S.D.N.Y. 2010) (reducing partner's claimed hours by 25% for claiming tasks that should be paralegal work, such as "work[ing] on database issues (alterations in original)); *see also Ryan v. Allied Interstate, Inc.*, Nos. 12 Civ. 0526 (AJP), 12 Civ. 1719 (AJP), 2012 WL 3217853, at *6 (S.D.N.Y. Aug. 9, 2012); *Rosado v. City of New York*, No. 11 Civ. 4285 (SAS), 2012 WL 955510, at *5 (S.D.N.Y. Mar. 5, 2012). The tasks above unequivocally qualify as administrative.

The Court, however, is unpersuaded by DOE's other critiques. DOE faults SWL for billing in one-hundredths rather than one-tenths of an hour. But there is nothing inherently abusive about that practice. If anything, where implemented with integrity such that invoices accurately reflect the time that attorney or paralegal devoted to a discrete task, this billing practice lends itself to greater precision. DOE has not shown that this billing practice was abused here. DOE also appears to fault SWL for small-duration time entries, but "[t]he practice of billing a tenth of an hour for a discrete task is not inherently problematic." *C.D.*, 2018 WL

3769972, at *8.  And SWL's invoices do not reflect the practice, which courts have recognized as abusive, of billing numerous separate small (*e.g.*, 0.1 hour) time entries for the same timekeeper in the same day, which, where the time entries reflect rounding-up, may cause the client to be billed for more time than the timekeeper worked for the client that day.  *See, e.g.*, *id.* at *8–9 (deducting half of reported hours tallied from 0.10-hour increments where billing records reflected multiple 0.10-hour increments on the same day, given that "such a practice can improperly inflate the number of hours billed beyond what is appropriate").  DOE also argues that SWL's time working on a closing brief that it never submitted should be deducted.  But SWL's work on that project appears to have been done in the good-faith expectation that such a brief would be needed.

Considering the well-founded critiques of plaintiffs' time records in totality, the Court's assessment is that a 15% across-the-board reduction in counsel's claimed hours for work at the administrative stage is in order.  Such eliminates needless excess and does "rough justice."  *Fox*, 563 U.S. at 838.

### 2.    Fees Litigation Before This Court

The legal basis for a fee application "is well-plowed acreage, leaving the task of the attorney to marshal the facts to support the number of hours expended on the underlying matter." *B.B. v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 4255 (VEC), 2018 WL 1229732, at *3 (S.D.N.Y. Mar. 8, 2018); *see A.B.*, 2021 WL 951928, at *9–10 (reducing hours billed by SWL attorneys in preparing its fee application by 50%, from about 84 hours to 42 hours).

Here, DeVinney, working alone, spent 29.9 hours on the fee application.  The Court has held that the billing rate for a junior attorney is appropriate for such work, given its simplicity and quality.  The Court's assessment, comparing this matter to other IDEA cases, is that the volume of the hours claimed, given the scale of the underlying administrative proceeding, is not

inherently excessive.[12]  However, for two reasons, a modest reduction in the compensable hours

spent pursuing a fee award in this Court is in order.[13]  First, as noted, BH's failure to attach fee

records until its reply brief occasioned needlessly extra work for DOE, obliging it to prepare and

file a surreply.  A small reduction of BH's hours for which the City must pay plaintiffs is

appropriate given the needless burden that BH's inefficiency imposed on the City.  Second, as

noted, BH's brief, in its legal dimensions, essentially cut and pasted from an earlier brief for a

different client.  Having done so reduces the rightful amount of hours BH can claim to have

needed to spend on the fees litigation.  The Court's judgment is that an overall reduction of the

fee award at this stage of 20%, from 29.9 hours to 23.92 hours, is in order.

### 3.      Costs

Plaintiffs request a total of $402 in costs, consisting solely of a $402 filing fee during this

fees action, which plaintiffs have documented.  Dkt. 62-1 at 45.  This cost is compensable.  *See,*

*e.g.*, *C.D.*, 2018 WL 3769972, at *12 (citing 20 U.S.C. § 1415(i)(3)(B)(i)(I) ("A district court

may award reasonable costs to the prevailing party in IDEA cases.")).

## IV.    Bottom-Line Calculations

The charts below summarize the Court's award of fees and costs in light of the rulings

---

[12] "[A] competent attorney should not have needed more than 40 hours to litigate [a] fee
petition."  *B.B.*, 2018 WL 1229732, at *3.  BH's requested hours fall under this benchmark.

[13] Where courts identify inefficiencies or a low-level of complexity in the underlying matter—
both present here—they routinely impose across-the-board reductions.  *See, e.g.*, *H.A.*, 2022 WL
580772, at *11 (reducing firm's fees by 20% when it billed 68.5 hours on the fee litigation alone
in a simple and uncontested case, translating to a total of 54.8 hours credited for the fee
litigation); *M.D.*, 2021 WL 3030053, at *6 (reducing hours credited for fee litigation by roughly
50% from 76.2 to 38.3 hours due to the case's "low degree of complexity"); *R.G.*, 2019 WL
4735050, at *5 (reducing hours crediting for fee litigation by roughly one third given case's
simplicity).

above.[14]  They reflect: (1) the hourly rates found appropriate for a fee award here, (2) the across-the-board 15% reduction in hours spent during the administrative proceeding, and (3) the 20% reduction in hours spent during the follow-on fee litigation before this Court.

The Court also awards, as required, post-judgment interest, *see* 28 U.S.C. § 1961; *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.") (quoting *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996)); *see also S.J.*, 2021 WL 100501, at *5.

| Attorneys' Fees: Administrative Proceeding | | | | |
|---|---|---|---|---|
| Attorney | Rate | | Hours | Total |
| Christopher Barnett | $ | 300.00 | 0.97 | $ | 293.25 |
| Tracey Discepolo | $ | 200.00 | 0.35 | $ | 71.40 |
| Lauren Druyan | $ | 300.00 | 6.03 | $ | 1,810.50 |
| Anna Belle Hoots | $ | 200.00 | 28.44 | $ | 5,688.20 |
| Anna Belle Hoots | $ | 150.00 | 43.59 | $ | 6,539.48 |
| Anna Belle Hoots | $ | 125.00 | 2.45 | $ | 307.06 |
| Tracey Spencer Walsh | $ | 425.00 | 35.78 | $ | 15,208.63 |
| Hermann Walz | $ | 200.00 | 0.13 | $ | 27.20 |
| Subtotal | | | 117.84 | $ | 29,945.72 |
| **Paralegal Fees: Administrative Proceeding** | | | | |
| Timekeeper | Rate | | Hours | Total |
| Wendy Ahlstrand | $ | 100.00 | 37.30 | $ | 3,730.65 |
| Ashley Camarena | $ | 100.00 | 1.65 | $ | 165.75 |
| Catriona Carey | $ | 100.00 | 1.44 | $ | 144.50 |
| Orla Mannion | $ | 100.00 | 16.52 | $ | 1,652.40 |
| Sonali Sanyal | $ | 100.00 | 22.89 | $ | 2,289.05 |
| Subtotal | | | 79.82 | $ | 7,982.35 |
| **Total** | | | **197.60** | **$** | **37,928.06** |

---

[14] For ease of reading, the charts present figures only to the second decimal.

| Attorneys' Fees: Southern District of New York | | | | |
|---|---|---|---|---|
| Attorney | Rate | | Hours | Total | |
| William DeVinney (Fees Motion) | $ | 200.00 | 23.52 | $ | 4,704.00 |
| William DeVinney (Administrative Task) | $ | 125.00 | 0.40 | $ | 50.00 |
| Subtotal | | | 23.92 | $ | 4,754.00 |
| **Total** | | | **23.92** | **$** | **4,754.00**[15] |

| Costs | | |
|---|---|---|
| Expense | Total | |
| SDNY Filing Fee | $ | 402.00 |
| **Total** | **$** | **402.00** |

## CONCLUSION

For the reasons reviewed above, the Court awards plaintiffs a total of $43,084.06 in reasonable attorneys' fees and costs, along with post-judgment interest. The Clerk of Court is respectfully directed to enter judgment in plaintiffs' favor for $43,084.06 with post-judgment interest, terminate all pending motions, and close this case.

---

[15] Under the IDEA, a plaintiff may not recover fees or costs for services performed after receipt of a written offer of settlement that exceeds the relief awarded. *See* 20 U.S.C. § 1415(i)(3)(D)(i) (court may not award fees for services performed "subsequent to the time of a written offer of settlement . . . [if] the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement"). On September 9, 2022, DOE made a $37,000 settlement offer. Opp. at 2. Per the Court's tabulation, at this point, plaintiffs were reasonably owed $37,928.06 for the administrative proceeding. Plaintiffs would additionally have been owed some portion of the ongoing federal action. Fee capping therefore does not apply from this first settlement offer. *See* 20 U.S.C. § 1415(i)(3)(D)(i); *O.R.*, 340 F. Supp. 3d at 371. On January 20, 2023, DOE made a second settlement offer of $42,850.00. Opp. at 2. Per the Court's tabulation, at this point, plaintiffs were reasonably owed $43,084.06. Fee capping is, again, irrelevant to that offer.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: July 13, 2023
      New York, New York